IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00423

GARY WAETZIG,

    Plaintiff,

v.

HALLIBURTON ENERGY SERVICES, INC.,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Gary Waetzig ("Plaintiff" or "Mr. Waetzig"), by and through his attorneys, Spencer J. Kontnik, Austin M. Cohen and Morgan E. Hamrick of KONTNIK|COHEN, LLC, hereby bring this *Complaint and Jury Demand* against Haliburton Energy Services, Inc. ("Halliburton"), under the Age Discrimination in Employment Act ("ADEA"), and further states as follows:

### I. INTRODUCTION

1. Mr. Waetzig, who was a dedicated and loyal employee of Halliburton, was subject to an unlawful discrimination and terminated on the basis of his age. Despite financial growth and open positions throughout the Rocky Mountain Region, where Mr. Waetzig was employed and for which he was qualified, Halliburton subject Mr. Waetzig to a one-person Reduction in Force ("RIF") based on his age. At the time of his termination, Mr. Waetzig was sixty-six years old. After his termination, Halliburton hired younger employees to replace Mr. Waetzig. Halliburton also discriminated towards Mr. Waetzig because it denied him the same benefits it affords to other younger employees: namely, Halliburton did not afford Mr. Waetzig

the opportunity to transfer within the company to vacant positions, for which he was qualified. Halliburton discriminated against Mr. Waetzig by terminating his employment in violation the ADEA despite his qualification, performance, experience and dedication to the company.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to the ADEA, as amended, 29 U.S.C. § 621, *et seq*.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Plaintiff was employed, at all relevant times to this Complaint, by Defendant in the State of Colorado.

4. Mr. Waetzig established all necessary conditions precedent to filing this Complaint and Jury Demand ("Complaint"). A Charge, No. 541-2018-00228 (the "Charge"), of employment discrimination was filed with the Equal Employment Opportunity Commission of the United States ("EEOC") by Gary Waetzig on or about December 18, 2017, and the Charge was amended on or around January 22, 2018. All charging documents were filed within 300 days of the Defendants commission of unlawful employment practices on September 20, 2017, when Defendants terminated Plaintiff. A Notice of Right to Sue was issued by the EEOC on November 22, 2019, and Mr. Waetzig is commending this action within ninety days of receipt of the November 22, 2019 Right to Sue letter.

## III. PARTIES

5. Mr. Waetzig is a citizen of the United States and a resident of and domiciled in the State of Wyoming.

6. At all times relevant to the allegations in this Complaint, Mr. Waetzig was employed by Halliburton out of the State of Colorado.

7. Mr. Waetzig was born on August 12, 1951.

8. Mr. Waetzig is a protected individual because, at the time of his termination on September 20, 2017, he was sixty-six years old.

9. At all times relevant to this Complaint, Mr. Waetzig was an employee within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 621 *et seq*.

10. Halliburton is an employer within the meaning of the ADEA, and has, at all times relevant to the allegations in this Complaint, continuously engaged in commerce within the State of Colorado. 42 U.S.C. § 2000e(b) and 29 U.S.C. § 621 *et seq*.

11. Halliburton is registered as a foreign corporation in the State of Colorado with a with a principal place of business located at 300 N Sam Houston Parkway E, Houston, Texas 77032. Halliburton's registered agent in the State of Colorado is located at 36 South 18th Avenue, Suite D, Brighton, Colorado 80601.

12. Halliburton is a wholly owned subsidiary of Halliburton Company, a Delaware Corporation ("Halliburton Corporate"). Halliburton has various departments and product lines including Multi-Chem.

## IV.   FACTUAL ALLEGATIONS

13. Mr. Waetzig obtained a degree in Business Administration and Management from Montana State University in 1972.

14. Mr. Waetzig obtained a degree in Organic Chemistry from the University of Wyoming in 1982.

15. Mr. Waetzig has been involved in the oil industry holding various sales positions beginning in September of 1972 until his unlawful termination from Halliburton on September 20, 2017.

16. Halliburton Corporate is one of the world's largest oil field companies and employs approximately 50,000 people.

17. Halliburton is a subsidiary of Halliburton Corporate.

18. Multi-Chem is a division within Halliburton.

19. Halliburton Company maintains one company wide policy that applies to its successors, subsidiaries, and their division across the world, including Multi-Chem.

20. Halliburton Corporate's policies state that its policies, including its anti-discrimination policies, apply "to Company operations worldwide."

21. Halliburton Corporate's policies define the "Company" as "Halliburton Company, a Delaware Corporation, its successors and subsidiaries and their divisions."

22. Halliburton Corporate's policies prohibit discrimination with respect to "transfer[s] … disciplinary actions … and termination."

23. Halliburton Corporate's policies apply to Halliburton and Multi-Chem.

24. Halliburton's policies permit employees to transfer to open positions within the Company.

### Mr. Waetzig's Employment with Halliburton

25. Halliburton first employed Mr. Waetzig as an Operations Manager in 2011.

26. In 2013 Mr. Waetzig accepted a new position within Halliburton as an Account Leader.

27. Halliburton's policies permitted Mr. Waetzig to transfer between open positions with the company in 2013.

28. From 2013 through the date of his termination, Mr. Waetzig was employed as an Account Leader with Halliburton.

29. From 2013 through the date of his termination, Mr. Waetzig lived in Gillette, Wyoming.

30. From 2013 through the date of his termination, Mr. Waetzig reported to Halliburton's Eaton, Colorado office, which is referred to as the Fort Lupton office.

31. From 2013 through the date of his termination, Mr. Waetzig was employed as part of Halliburton's Rocky Mountain Region.

32. As an Account Leader, Mr. Waetzig's responsibilities included developing key corporate accounts, management strategies and building sales.

33. As an Account Leader, Mr. Waetzig primarily serviced accounts throughout the Rocky Mountain Region.

34. As an Account Leader, Mr. Waetzig serviced some accounts in the Mid-Continental Region.

35. As an Account Leader, Mr. Waetzig traveled to the following states to meet with clients, manage existing accounts and build sales: Colorado, Wyoming, New Mexico, Utah, Montana, South Dakota, North Dakota, Texas, and Oklahoma.

36. As an Account Leader, Mr. Waetzig spent the majority of his time traveling to the States identified in Paragraph 35 to meet with different clients.

37. Mr. Waetzig's major accounts included, but were not limited to, Anadarko, Bill Barrett, Bonanza Creek, Chevron, Chesapeake, Denbury, Devon, E.O.G., Encana, Newfield, Nobel Energy, WPX, Whiting, Ursa, and Ultra.

38. As an Account Leader from 2013 through the date of his termination, Mr. Waetzig met Halliburton's expectations, met his sales goals, was not subject to discipline, and performed his responsibilities consistent with Halliburton's expectations.

39. As an Account Leader in the Rocky Mountain Region, Mr. Waetzig reported directly to Bob Potts.

40. Mr. Potts was the Regional Business Development Manager for the Rocky Mountain Region.

<u>Halliburton's Preference for a Younger Workforce and Decision to Replace Mr. Waetzig</u>

41. In 2016 and 2017, Halliburton experienced continued economic growth.

42. In 2016 and 2017, despite continued growth, Mr. Waetzig became aware that Halliburton was attempting to institute a younger work force.

43. In approximately 2017, Mr. Waetzig noticed a continued trend that Halliburton was regularly hiring younger employees for Account Leader and District Manager positions.

44. In approximately 2017, Mr. Waetzig noticed a continued trend that Halliburton was regularly promoting younger employees for Account Leader and District Manager positions.

45. Prior to 2017 and in early 2017, Mr. Waetzig would regularly meet with District Managers throughout the Rocky Mountain Region related to strategic accounts, account plans and directions.

46. Brad Michaels, the Vice President of Multi-Chem Operations, and Mr. Potts would often attend the meetings with District Managers via telephone.

6

47. The meetings with the District Managers occurred approximately once a month.

48. In early 2017 and prior to March of 2017, Halliburton began excluding Mr. Waetzig from District Managers meetings related to strategic accounts, account plans and directions.

49. In early 2017 and prior to March of 2017, an e-mail was sent out to all Account Leaders and District Managers inviting the employees to a March 2017 conference in Denver, Colorado.

50. Mr. Waetzig was excluded from this e-mail even though he was an Account Leader at the time.

51. Mr. Waetzig learned of the conference for Account Leaders and District Managers from Rick Vogel.

52. Rick Vogel was a Business Development Manager for the Rocky Mountain Region at the time Mr. Waetzig learned of the conference.

53. After learning of the meeting from Mr. Vogel, Mr. Waetzig e-mailed Mr. Potts and requested permission to attend the conference with his younger co-workers.

54. In March of 2017, Halliburton held a meeting for its Account Leaders and District Managers from the Rocky Mountain Region at the Chase building in Denver, Colorado.

55. Approximately thirty Account Leaders and District Managers attended the meeting in March of 2017.

56. During the March 2017 meeting, Mr. Waetzig observed that the vast majority of the employees who attended the meeting were in their early thirties and forties.

57. During the March 2017 meeting, Mr. Waetzig observed that he was the oldest of the Account Leaders and District Managers who attended the meeting.

58.     At beginning of the March 2017 meeting, Rick Griffin, the Executive Vice President for the Rocky Mountain Region, stated that there were, "many growth opportunities for the younger up and coming talent" in the room.

59.     Mr. Griffin was responsible for overseeing approximately 1,500 employees and $250 million is sales per month.

60.     Mr. Griffin reported to David Lazar, the Chief Executive Office for Halliburton at the time Mr. Griffin stated that there were "many growth opportunities for the younger up and coming talent" in the room.

61.     Mr. Waetzig expressed his concern regarding Mr. Griffin's comments to Mr. Potts and Mr. Michaels during the March 2017 meeting.

62.     Mr. Waetzig expressed his desire to stay with Halliburton and continue working for Halliburton.

63.     Mr. Waetzig also expressed his concern to Mr. Vogel regarding Mr. Griffin's comments and Halliburton's efforts to hire a younger workforce.

64.     After the March 2017 meeting, Mr. Waetzig continued to be excluded from meetings with District Managers, Mr. Potts and Mr. Michaels that he had been involved with prior to 2017.

65.     On September 20, 2017, Mr. Potts and Mr. Michaels met with Mr. Waetzig in Denver, Colorado and informed Mr. Waetzig that that he was being terminated as part of a one-person RIF.

66.     Shortly after his termination, Mr. Waetzig learned that Halliburton replaced Mr. Waetzig.

8

67. Halliburton hired Kyle Starr to assume Mr. Waetzig's responsibilities in the Fort Lupton, Colorado office. Mr. Starr was under forty years old.

68. Halliburton hired David Alexander to assume Mr. Waetzig's responsibilities in Dickinson, North Dakota. Mr. Alexander was under forty years old.

69. Halliburton hired Trent Reary to assume Mr. Waetzig's responsibilities in Vernal-Roosevelt, Utah. Mr. Reary was under forty years old.

70. Shortly after his termination, Mr. Waetzig became aware of at least three other employees over the age of sixty who were terminated as part of a RIF and subsequently replaced by younger employees.

<u>Halliburton's Alleged One-Person RIF and Alleged RIF Criteria is Not Credible</u>

71. In response to Mr. Waetzig's charge of discrimination, Halliburton stated that Mr. Waetzig was terminated because, "there was no longer sufficient client activity in the area to support the position held by [Mr. Waetzig]."

72. From 2007 to the present, the Rocky Mountain Region, where Mr. Waetzig was employed, grew from approximately 13 million dollars in revenue to approximately 250 million dollars in revenue.

73. The Rocky Mountain Region's revenue, based on the clients that Mr. Waetzig serviced, grew every month during the year in 2017, with the lone exception being February, prior to Mr. Waetzig's termination.

74. In 2017, the revenue generated by the Rocky Mountain region was approximately: $2.8 million in January; $2.6 million in February; $3.0 million in March; $3.1 million in April; $3.4 million in May; $3.6 million in June; $3.6 million in July; $3.9 million in August; and $4.0 million in September.

75. In 2017, the revenue generated by Mr. Waetzig's accounts was approximately: $299,902 in January; $366,633 in February; $389,160 in March; $403,576 in April; $372,351 in May; $434,300 in June; $456,756 in July; $411,763 in August; and $513,634 in September.

76. The economic growth corresponded with an increase in open positions including Account Leader positions.

77. In March of 2017, Halliburton announced that it would be adding 2,000 additional jobs in the United States. Halliburton Chief Executive Officer explained, "we are coming off a historic trough, so what we have to add back is almost unprecedented."

78. In response to Mr. Waetzig's charge of discrimination, Halliburton also stated that it terminated Mr. Waetzig due to the "closure of the Gillette facility."

79. In 2016, the year preceding Mr. Waetzig's termination, Halliburton closed a facility that it operated in Gillette, Wyoming.

80. Mr. Waetzig was not terminated in 2016 as a result of the closure of the Halliburton facility in Gillette, Wyoming.

81. Mr. Waetzig, who lives in Gillette, Wyoming, remained employed in Gillette, Wyoming and continued reporting to the Fort Lupton office in Colorado until his termination on September 20, 2017.

82. Per Halliburton Corporate's transfer policy, and in response to the 2016 closure of the Gillette facility, Halliburton offered, and accepted the transfer of two younger employees to different regions outside of Gillette.

83. A delivery driver under the age of forty was transferred to a new district outside Gillette, Wyoming.

84. Nathan Jones, an Account Manager in his twenties was transferred from Gillette, Wyoming to Dickerson, North Dakota.

85. Unlike his younger counterparts, Mr. Waetzig was not given the opportunity to transfer to a different open position within Halliburton.

86. In response to Mr. Waetzig's claim of discrimination, Halliburton also claimed that it eliminated Mr. Waetzig's position as an Account Leader.

87. At the time of Mr. Waetzig's termination, Halliburton employed hundreds of other Account Leaders throughout the United States including over one hundred Account Leaders in the Rocky Mountain Region alone.

88. At the time of Mr. Waetzig's termination, Halliburton employed approximately forty-five Account Leaders in the Rocky Mountain Region on the Multi-Chem project, where Mr. Waetzig was employed.

89. At the time of Mr. Waetzig's termination, Halliburton had 73 open positions in Williston, which was one of the regions that Mr. Waetzig serviced.

90. Halliburton's decision to terminate Mr. Waetzig as part of a one person RIF was pretextual.

91. As a result of Defendant's illegal conduct toward him, Ms. Waetzig suffered economic loss, severe emotional distress, and other significant injuries, damages and losses in an amount to be proven at trial.

## V.  STATEMENT OF CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Willful Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (as amended))

92. Plaintiff incorporates by reference all paragraph of this Complaint as if fully set forth herein.

93. Mr. Waetzig is a member of the class protected by the ADEA, in that at the time of the adverse actions taken against him, he attained the age of forty.

94. Defendant's decision to terminate him was because of his age: he was sixty-six years old at the time of his termination.

95. At all relevant times, Mr. Waetzig performed the functions of his job completely and was qualified for his position.

96. Defendant replaced Mr. Waetzig with employees under the age of forty.

97. Defendant's decision to implement a RIF and terminate Mr. Waetzig was not borne out of economic necessity and was pretextual.

98. Defendant's decision to implement a RIF and terminate Mr. Waetzig was pretextual because Defendant did not eliminate Mr. Waetzig's position.

99. Defendant's decision to implement a RIF and terminate Mr. Waetzig was used as an opportunity to change the workforce and eliminate older employees.

100. Defendant's decision to implement a RIF and terminate Mr. Waetzig without affording him the opportunity to transfer within the company was discriminatory.

101. Defendant treated Mr. Waetzig and other older employees less favorably than their similarly situated younger counterparts.

102. Defendant, either directly or through its agents, discriminated against Mr. Waetzig on the basis of his age, and caused severe injuries, damages and losses.

103. Defendant's conduct was the proximate cause of Mr. Waetzig's injuries, damages and losses.

104. Mr. Waltzing's responsibilities were assumed by younger employees after his termination.

105. Defendant's age discrimination against Mr. Waetzig was willful, in that Defendant's conduct willfully, knowingly or recklessly disregarded the requirements set forth by the Age Discrimination in Employment Act.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant:

(a) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b) All economic losses on all claims allowed by law;

(c) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d) Attorney's fees and the costs associated with this action, as well as expert witness fees, and costs;

(e) Pre and post-judgment interest at the lawful rate; and

(f) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated: February 19, 2020

Respectfully submitted,

*s/ Spencer J. Kontnik*
Spencer J. Kontnik
Austin M. Cohen
Morgan E. Hamrick
KONTNIK | COHEN, LLC
201 Steele Street, Suite 210
Denver, Colorado 80206
Telephone: (720) 449-8448
E-Mail: skontnik@kontnikcohen.com
E-Mail: acohen@kontnikcohen.com
E-Mail: mhamrick@kontnikcohen.com
Attorneys for Plaintiffs GARY WAETZIG